IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RAYMOND L. DOUGLAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3163 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

The Plaintiff Raymond Douglas seeks judicial review of the final Decision of Defendant Commissioner of Social Security that he is not entitled to Disability Insurance Benefits.  42 U.S.C. §§ 416(I) and 423(d). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, the Court affirms the Commissioner's Decision.

STATEMENT OF FACTS

Douglas was born in December 1952.  He graduated from Southern Illinois University in 1978 with a bachelor's degree, majoring in psychology. Record of Proceedings (d/e 10) (hereinafter "R."), at 103.  In 1983, Douglas

1

took business management courses at Sangamon State University and Lincoln Land Community College in Springfield, Illinois. Id. He has worked as a human resource specialist, an employment counselor, a substitute teacher, a sales representative, and a security guard. R. 101-02.

Douglas filed a claim for disability benefits on February 18, 2004. R. 54. Douglas injured his back and neck when he fell at work on July 2, 2003. He claims that he was totally disabled beginning in January 2004. R. 56. He last worked part-time as a substitute teacher in February 2006. R. 416.

On July 3, 2003, the day after his fall, Douglas underwent a cervical spine magnetic resonance imaging (MRI). The MRI showed moderate degeneration in the neck. R. 159. A second MRI in September 2003, showed mild to moderate diffuse disc bulging in the cervical spine. R. 156-57. On October 27, 2003, Edward Trudeau, M.D., examined Douglas and performed nerve conduction studies. R. 165-70. He diagnosed mild to moderate C4 radiculopathy on the left and mild on the right. R. 169. Douglas was then examined by neurosurgeon Brian Russell, M.D., on December 10, 2003. Russell recommended chiropractic care rather than surgery. R. 195.

2

Douglas was then examined by chiropractor John Warrington, D.C. R. 214.  Dr. Warrington stated on January 9, 2004, that Douglas would be off work for two months.  R. 190.  Thereafter, Douglas saw Dr. Warrington regularly for chiropractic treatments.  R. 239-395.  Dr. Warrington stated repeatedly that Douglas should continue to be off work due to his back and neck pain. E.g., R. 240.  On March 15, 2004, Dr. Warrington rendered the following opinion in a telephone interview with state officials:

> [C]laimant has severe functional limitation in the use of his left arm for fine or gross manipulation.  His left arm has little strength and is visibly atrophied.  Claimant's radicular pain also limits claimant in maintaining a sitting position for longer than 20 minutes without a change of position.  Sitting for any extended period also causes severe cramping of claimant's left hand.  Claimant is currently receiving occupational therapy designed to restore strength and function to his left arm.  I estimate that it will take 6 months to a year of such therapy to restore normal function to his left arm.

R. 214.

On February 17, 2004, Douglas was examined by neurologist David Gelber, M.D.  R. 202-04.  Dr. Gelber noted atrophy in the upper left arm and diminished pinprick sensation in the left arm.  Dr. Gelber repeated the nerve conduction studies.  He found very mild right carpal tunnel syndrome, mild radiculopathy in the cervical spine, and mild nerve root irritation.  R.

3

200-01.

On March 2, 2004, Douglas underwent an independent medical examination by surgeon Stephen Pineda, M.D.  R. 206-08.  Dr. Pineda noted the atrophy on the left side.  Dr. Pineda found that Douglas exhibited intact sensation, good flexibility of his neck, and 80 percent of normal neck motion.  Dr. Pineda reviewed a video taped recording of Douglas removing packages from an automobile and entering and exiting the vehicle.  Douglas had no trouble with these activities.  Dr. Pineda recommended releasing Douglas for work that restricted him to occasional lifting of as much weight as he could tolerate.  R. 208.

In May 2004, state agency physician Julio Pardo, M.D., reviewed Douglas' medical records and opined that Douglas could lift 50 pounds and 25 pounds occasionally, sit or stand and walk for at least 6 hours in an eight-hour work day.  R. 215-22.  Dr. Pardo found no other limitations on Douglas' ability to perform basic physical work-related activities.  R. 216-22.

Douglas fell again on October 20, 2004, and re-injured his back.  R. 420.  Douglas continued to undergo chiropractic treatment with Dr. Warrington during this time period.  Dr. Warrington continued to find that Douglas should be off work.

On February 23, 2005, Douglas was examined by orthopaedist Timothy VanFleet, M.D. R. 320-21. Douglas had diminished reflex in the left biceps versus the right. He had good flexion and rotation of his neck and pinprick sensation was intact throughout his arms and legs. An MRI scan showed no focal neurological compression in Douglas' neck. R. 321. Dr. VanFleet recommended active stretching and exercise.

In January 2006, Douglas' treating physician Sunil Bansal, M.D., sent Douglas for physical agility testing. R. 234. The test results showed decreased range of motion in Douglas' neck, shoulders, hips, and trunk, and weakness in his shoulders and hips. According to the test results, Douglas could lift 10 pounds from floor to waist and from waist to overhead. R. 233. Dr. Bansal opined that Douglas could lift no more than 10 pounds; that he could not frequently bend, squat, or kneel; and that he needed the flexibility to alternate positions between sitting, standing, and walking as needed. R. 233.

The Administrative Law Judge (ALJ) conducted an evidentiary hearing on March 15, 2006. R. 409-47. Douglas appeared pro se. The ALJ began the hearing by asking Douglas if he wanted to secure a representative to help him at the hearing,

5

> ALJ: [T]he first thing I wanted to discuss with you this morning is make sure you understand what your rights are here this morning. We sent you some materials in the mail that point out to you your right to seek representation and so forth. Did you get those materials?
>
> Douglas: Yes, sir.
>
> ALJ: Okay, you understand then you have a right to seek representation, have a representative here this morning to help you with things such as, you know, make sure the record is complete and be here to ask questions of not only yourself but also, as you know, we've got a vocational expert here with us today right in there with you, Mr. Hammond who is here to tell us what effect certain limitations may have on a person's ability to work. Now I'll be doing those things, but I'm not your representative, so do you understand all that and you want to go ahead this morning without a representative?
>
> Douglas: Yes, sir.
>
> ALJ: And --
>
> Douglas: I'm okay because -- if I could say a word. I used to be a claims adjudicator myself at one time.
>
> ALJ: Oh, okay, well, then --
>
> Douglas: About 40 years ago, so I, I have a good understand (sic) of it.
>
> ALJ: Okay, sounds good. . . .

R. 411-12. The ALJ then proceeded with the hearing.

6

Douglas testified that he lived alone in a one-story flat with a basement. R. 415. He took care of his personal hygiene. R. 429. His laundry facilities were in his basement, and he walked up and down his one flight of stairs to do his laundry. R. 415. In a typical day, he would get up, read some Scriptures, drive to the chiropractor for treatment, meet his cousin afterwards at McDonald's for breakfast, drive to his mother's home, drive home at about 11:00 a.m., and then lie down for the rest of the day. R. 429-30. He stated that he could only sit or stand for about 10 minutes at a time. R. 427-28.

The vocational expert Bob Hammond then testified. The ALJ asked Hammond the following hypothetical question:

> Okay, for the first hypothetical assume past work the same as the claimant and an exertional capacity limited to a full range of light work with a need for a sit/stand option and no climbing of ladders, ropes, and scaffolds, and other postural functions could be performed occasionally; only occasional pushing and pulling; and occasional overhead reading; and also should avoid environmental hazards such as unprotected heights and dangerous machinery. How would those restrictions affect past work?

R. 437. Hammond responded that Douglas could still perform much of his past work:

> The past position as case management employment specialist

would still be included within that hypothetical. The human resource specialist, vet counselor would also be included in that position, with the hypothetical. The security guard position would be included within the hypothetical. The substitute teacher position would also be included within that hypothetical.

Id.

The ALJ then asked Hammond to assume that "the exertional level were reduced to sedentary." Id. Hammond responded, "It would eliminate all the positions, Your Honor, with the exception of the employment specialist." Id. The ALJ then asked Hammond:

> All right. All right, and how many -- well, okay -- and then let me then ask you with regard to this -- the last hypothetical on the sedentary if you add the vocational factors assuming a hypothetical individual of the claimant's age, education, and work history, would there be any jobs in the national and/or regional economy that such a person could perform specifically with respect to transferability of skills?

R. 437-38. Hammond opined that such a person would have transferable skills to perform the following positions in the national economy: case worker, 10,800 positions; cashier, 11,000 positions; traffic clerk, 6,000 positions; and telephone operator, 10,000 positions. R. 438-39.

The ALJ issued his Decision on April 20, 2006. R. 13-20. The ALJ followed the five-step analysis set forth in the Social Security

8

Administration regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The listings of such severe impairments are set forth in the Listings. 20 C.F.R. Part 404 Subpart P, Appendix 1. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the ALJ to determine whether the claimant is able to return to his prior work considering his residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner

9

has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. <u>Knight v. Chater</u>, 55 F.3d 309, 313 (7th Cir. 1995).

The ALJ determined that Douglas met Steps 1 and 2. The ALJ determined that Douglas was not currently engaged in gainful employment. Douglas had worked as a substitute teacher after the date that his disability started, but the ALJ determined his earnings from that work did not meet the regulatory guidelines for gainful employment. <u>R.</u> 14. Douglas also had a severe impairment based on his history of degenerative back disease and glaucoma. <u>Id.</u>

At Step 3, the ALJ determined that Douglas' conditions did not meet any Listing, and so, he was not so severely impaired to be considered disabled regardless of his age, education, and work experience. <u>R.</u> 15.

The ALJ then determined at Step 4 that Douglas could not return to his prior work. The ALJ found that Douglas had the following RFC:

> The claimant has the residual functional capacity to perform the exertional and non-exertional requirements of work except for lifting or carrying more than 10 pounds occasionally, or more than occasional standing, walking, pushing, or pulling, and the need for a sit/stand option (exertional); and work requiring any

climbing of ladders, ropes, or scaffolds, or more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching, or crawling, or exposure to unprotected heights or unprotected hazardous machinery (non-exertional) (20 CFR § 404.1545).

R. 19, Finding No. 6.  The ALJ then explained in Finding No. 8:

The claimant's residual functional capacity for the full range of sedentary work is reduced by his need for a sit/stand option, and by the non-exertional limitations listed in Finding No. 6.

R. 19, Finding No. 8.  The ALJ relied on the opinions of Drs. Pineda and Bansal particularly.  The ALJ specifically stated that Dr. Bansal's opinion would be favored over Dr. Warrington's even though they both were treating Douglas, because Dr. Bansal was an M.D., and Dr. Warrington was a chiropractor.  R. 18.

The ALJ found at Step 5 that the Commissioner had met his burden to show that Douglas could perform a substantial number of jobs that exist in the national economy.  The ALJ noted that the regulations state that a person with Douglas' age, education, experience, and RFC was not disabled if he had transferable skills.  R. 17.[1]  The ALJ relied on the testimony of Hammond to find that Douglas had transferable skills that would allow him

---

[1] Page 17 of the Record is out of order.  It is page 6 of the ALJ's Decision.  It has incorrectly been placed between pages 4 and 5 of the ALJ's Decision instead of after page 5.

11

to perform the jobs identified in Hammond's testimony. Id. The ALJ, therefore, concluded that Douglas was not disabled.

Douglas appealed to the Commissioner's Appeals Counsel. The Appeals Counsel found no reason to review the ALJ's decision. R. 4. The ALJ's decision then became the decision of the Commissioner. Douglas then brought this action for judicial review. Id.

## ANALYSIS

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's findings are supported by substantial evidence. The ALJ's

finding that Douglas could perform sedentary work with the additional restrictions described by the ALJ is consistent with the opinions and findings of Drs. Pardo, Pineda, and Bansal. Dr. Bansal opined that Douglas' limitations restricted him to the sedentary work described by the ALJ. Drs. Pardo and Pineda opined that Douglas could perform a greater range of work. Only Dr. Warrington disagreed with these evaluations. The ALJ was justified to accept the opinion of Dr. Bansal over Dr. Warrington since Dr. Bansal is an M.D., and Dr. Warrington is a chiropractor. The Social Security Regulations list medical doctors as acceptable sources of medical evidence, but not chiropractors. 20 C.F.R. § 404.1513(a).

The ALJ's finding that the Commissioner met his burden at Step 5 is also supported by substantial evidence. Hammond testified that a person with Douglas' limitations could perform a substantial number of jobs in the national economy, including caseworker, cashier, telephone operator, and traffic clerk. R. 438-39. Hammond's testimony constitutes substantial evidence that supports the ALJ's finding.

Douglas asks the Court to strike the Commissioner's Motion for Summary Affirmance because the Commissioner did not consider all of the medical records. Plaintiff's Response to Commissions Motion for Summary

13

Affirmance (d/e 21) (Plaintiff's Response), at 1-2.  In particular, Douglas relies heavily on the results of medical tests and examinations that occurred after the ALJ issued his Decision. Motion to Amendment (d/e 12), attached exhibits, Medical Records.  The Commissioner properly argued that this after-the-fact evidence is not relevant in deciding whether the ALJ's decision was supported by substantial evidence. Eads v. Secretary of Dept. of Health and Human Services, 983 F.2d 815, 817-18 (7th Cir. 1993).  The Court sees no basis to strike the Commissioner's Motion or Memorandum.

Douglas notes that this Court allowed him to supplement the record with this post-decision medical evidence. Plaintiff's Response, at 2.  The Court allowed Douglas to supplement the record to give Douglas the opportunity to present all the evidence he thought was important.  In addition, new medical evidence may sometimes be a basis to remand a case for further proceedings.  Eads, 983 F.2d at 817; 42 U.S.C. § 405(g). Douglas, however, has not asked for such a remand.

Even if Douglas had asked for a remand, the Court would only grant such a remand if there was a reasonable probability that the ALJ would have reached a different conclusion in light of the new evidence. Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997).  Douglas' evidence about his

14

condition after the issuance of the ALJ's Decision is not relevant to his condition at the time that his application for benefits was under consideration. Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1989). His correct remedy is to file a new application for benefits based on his current condition. Id.

Douglas also complains that the ALJ did not consider his testimony regarding his symptoms and his functional limitations. The Court disagrees. The ALJ considered his testimony and made a determination that his testimony was not fully credible. R. 18. The Court will not revisit credibility determinations unless they are patently wrong. See e.g., Diaz v. Chater, 55 F.3d at 308. The Court sees no basis to question the ALJ's credibility determinations.

Finally, Douglas complains that he was not represented by counsel because he was unable to find a lawyer that would take his case. Plaintiff's Response, at 19. As quoted above, Douglas never informed the ALJ that he wanted a representative at the hearing. Rather, Douglas gave the ALJ the clear impression that he wanted to proceed without a representative. R. 411-12. If Douglas wanted a lawyer, but was having difficulty finding one, he should have told this to the ALJ at the hearing. Based on Douglas'

representations at the hearing, the ALJ did not err in allowing Douglas to proceed <u>pro</u> <u>se</u>.

THEREFORE, the Defendant Commissioner's Motion for Summary Affirmance (d/e 19) is ALLOWED. The Plaintiff's Motion for Summary Judgment (d/e 17) is DENIED. The Decision of the Commissioner is affirmed. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: June 7, 2007.

    FOR THE COURT:

          s/ Jeanne E. Scott
          JEANNE E. SCOTT
          UNITED STATES DISTRICT JUDGE